**Scott Kurt BECKER, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C5-85-515.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Richard Genty, Winsted, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

The trial court rescinded the revocation of respondent Scott Becker's driver's license on the basis that there was no probable cause that Becker was the driver of the vehicle. The Commissioner of Public Safety appeals. We affirm.

## FACTS

On December 1, 1984, Officer Peter Kisling (Kisling) arrested respondent Scott Becker (Becker) for the crime of driving while under the influence of alcohol. Becker refused testing. Pursuant to the implied consent statute, Minn.Stat. § 169.123 (1984), Becker's driving privileges were revoked. Becker initiated this action for judicial review of the revocation. Prior to the civil review hearing the criminal charges against Becker were dismissed and the only issue on appeal is implied consent.

At the implied consent review hearing, the State chose to proceed with only one witness, Kisling.

Kisling testified that while sitting on a side street on December 1, 1984, at 3:29 a.m., he noticed a car with a headlight out and a loud muffler. Kisling pulled out behind the vehicle. Shortly thereafter the vehicle pulled over to the curb and stopped. Kisling proceeded past the vehicle. Kisling drove a short distance, then turned to view the vehicle again. The vehicle had resumed traveling. Kisling pulled behind the vehicle again. Once more the vehicle pulled over and stopped. Kisling proceeded. While watching the vehicle in his rear view mirror, Kisling saw the vehicle resume traveling. Kisling made a U-turn and stopped the vehicle. When Kisling pulled up behind the vehicle, he observed someone (unidentified) in the back seat reach over to shut off the car motor. As Kisling approached the vehicle, he saw three people in the back seat and one person in the front seat.

Kisling obtained identification from the four men in the vehicle, Becker, Von Berge, Frahm, and Steinhaus. Von Berge was seated in the front passenger's seat. Becker was seated in the middle of the back seat. Frahm was seated in the back behind the driver's wheel. Steinhaus was seated in the back to Becker's right. Kisling did a license check. Not one of the four men had a valid driver's license. All appeared to be under the influence of alcohol. The motor vehicle check indicated that the vehicle belonged to Becker.

The officer questioned Becker in his squad car. Becker denied that he had been driving the car. Becker also stated he did not know who was driving. Kisling next interviewed Frahm in his squad car. Frahm denied driving and also denied any

knowledge of who was driving. Kisling then interviewed Steinhaus. Steinhaus denied driving and denied knowledge of who was driving. Finally Kisling interviewed Von Berge. Von Berge identified Becker as the driver. Kisling conducted second interviews of Frahm and Steinhaus, and then they identified Becker as the driver.

At trial Kisling testified he had no independent knowledge of who was driving the vehicle based upon his observations.

The trial court rescinded the revocation of Becker's license. The court reasoned that because the only witness the State called (Kisling) admitted that he had no independent knowledge of who was driving the car, the State's entire case for probable cause rested on the fact of registration and the hearsay testimony of three of the occupants. The court found that the four occupants were intoxicated to some degree, that two of them first stated that they did not know who was driving the car and later changed their story, and that all four had some motive to blame the other. The court concluded that the evidence offered by the State did not show probable cause by a preponderance of the evidence.

As to the hearsay statements of the three occupants, the court stated it would not consider them as evidence "for anything other than consideration of what these three fellows said." The court went on to say that it did not feel the officer proved who was driving the car by any evidence that the court considered as admissible on the question of who was the driver.

## ISSUES

1. Did the trial court err when it ruled that the hearsay statements were unreliable and thus not sufficient for the determination of probable cause in an implied consent revocation hearing?

2. In an implied consent revocation under Minn.Stat. § 169.123 (1984), is the Commissioner of Public Safety required to prove that the alleged driver was in fact driving the motor vehicle?

## ANALYSIS

### I.

**Probable Cause**

Minn.Stat. § 169.123, subd. 2 (1984) requires, among other things, that a peace officer have "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" before the provisions of the statute apply to revoke a person's driver's license. The trial court permitted Kisling's testimony of what Von Berge, Frahm, and Steinhaus told him about who was driving. However, in his closing remarks he characterized the statements as inadmissible hearsay.

 Hearsay statements of private citizens generally are admissible to show probable cause in implied consent proceedings. *Marben v. State*, 294 N.W.2d 697, 699 (Minn.1980); *Schlemme v. Commissioner of Public Safety*, 363 N.W.2d 781, 784 (Minn.Ct.App.1985). However, the hearsay should be reliable. *Schlemme*, 363 N.W.2d at 784. A trial court may question an informer's reliability if the informer is involved in any way with the unlawful activity at hand. *See State v. Phelps*, 297 Minn. 61, 64, 209 N.W.2d 780, 782 (1973).

 All four individuals in the automobile were under the influence of alcohol. None had valid driver's licenses. Whoever admitted driving the vehicle could have been charged with driving while under the influence of alcohol and driving without a license. Frahm and Steinhaus changed their story as to who was driving after Von Berge came back to the vehicle. The three had sufficient opportunity to compare what they had told Kisling prior to this change. The final statements of those three are tainted by inconsistency and their self-serving nature. They are not the statements of disinterested third parties. The circumstances of this case indicate a certain degree of unreliability. The trial court is in the best position to assess the quality of evidence, particularly the quality of oral

evidence, and we do not find that the trial court clearly erred in its evidentiary ruling.

■ The court had the discretion to admit the hearsay (and we note that valid probable cause often rests on hearsay), but if admitted, the court is free to give it whatever weight it deems proper. We cannot say the trial court erred in finding the offered hearsay testimony somewhat untrustworthy and of little weight.

The State argues that these facts substantially resemble those in *Hunt v. Commissioner of Public Safety*, 356 N.W.2d 801 (Minn.Ct.App.1984), a case in which this court upheld the trial court's finding of probable cause that the petitioner was the driver of the vehicle. In *Hunt*, the officer, pursuant to a report by a disinterested citizen, found a car abandoned in a ditch. An envelope in the car was addressed to Hunt. The officer found Hunt and another man walking one to one and one-half blocks from the scene. Hunt denied knowledge of ownership of the vehicle or why it was in the ditch. A vehicle check showed Hunt was the owner of the vehicle. After observing signs of intoxication, the officer placed Hunt under arrest.

At trial Hunt testified that his wife drove him and his friend to a bar and later picked them up. He testified that his wife lost control of the car and that it spun out into the ditch. He further testified that a neighbor gave his wife a ride and that he and his friend began to walk home. Hunt's wife corroborated Hunt's testimony. Hunt did not produce the neighbor.

The trial court determined that the officer had probable cause to believe that Hunt was the driver, and that he was driving while under the influence of alcohol. The trial court determined that the testimony of Hunt and his wife was not credible. We affirmed the findings of the trial court in *Hunt*:

The court determined that their version was "extremely incredible." This record allows us to be deferential to the court's determination. Recently in *Berry v. Goetz*, 348 N.W.2d 376 (Minn.Ct.App. 1984), we emphasized that whenever

the evidence supporting [the court's] finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances.

*Id.* at 378 (quoting *Fidelity Bank and Trust Company v. Fitzimons*, 261 N.W.2d 586, 589 (Minn.1977)).

*Hunt*, 356 N.W.2d at 803.

We do the same here. In this case, the trial judge, after listening to the oral testimony offered by the State, found it unpersuasive. As in *Hunt*, we give deference to the trial court's determination of the credibility of oral testimony and will only overturn if there is clear error. We find none.

## II.

### Driver

Respondent argues that the Commissioner of Public Safety must prove not only that Kisling had probable cause to believe that Becker was the driver, but must also prove that Becker *in fact* was the driver.[1] Because we hold that the trial court did not err in finding lack of probable cause, we do not address this second issue as it is not necessary to decide the case.

## DECISION

The trial court's evidentiary ruling on the offered hearsay evidence was not error. The trial court's finding that the Commissioner did not sustain his burden of proof is not clearly erroneous.

Affirmed.

---

1. *Roberts v. Commissioner of Public Safety*, 371 N.W.2d 605 (Minn.Ct.App.1985), *pet. for rev. filed*, Aug. 22, 1985, held that "[i]n seeking to sustain a revocation of a driver's license, the Commissioner of Public Safety must show not only that the arresting police officer had proba-

ble cause to believe the driver was in physical control of his vehicle, but also that the driver was in such physical control." We note that *Roberts* involved *physical control* of a vehicle, not the *driving* of a vehicle involved here.