Donna Mae DUTCHER
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C5–86–1948.

Court of Appeals of Minnesota.

May 26, 1987.

Bernard E. Johnson, Columbia Heights, for respondent.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ.

## OPINION

BRUCE C. STONE, Judge.

Respondent Donna Mae Dutcher was arrested for driving while under the influence and her driver's license was revoked pursuant to the implied consent law when a test revealed an alcohol concentration of .18. She petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner appeals. The respondent did not file a brief and this court will consider the matter pursuant to Minn.R.Civ.App.P. 142.03. We affirm.

## FACTS

On May 11, 1986, at approximately 11:30 p.m., State Trooper Steven Sjerven received a call from his dispatcher reporting a one-vehicle rollover accident on Highway 95, east of Cambridge. Sjerven proceeded east on Highway 95, and drove approximately five miles past the reported site, but did not see any accident. Sjerven then turned his squad car around and proceeded westbound on Highway 95 back to Cambridge. While driving back, Sjerven saw a pickup truck which was westbound on Highway 95 being driven slowly and drifting onto the shoulder. Sjerven stopped the truck and identified the driver as Barry Dutcher, respondent's husband. Sjerven testified that Dutcher asked if he was looking for a rollover accident. Respondent was a passenger in the truck and informed Sjerven

that she had been involved in a rollover accident.

While the trial court did not make these findings, Sjerven also testified that he asked respondent if she had been injured, and she replied she had not been injured. She also said she was alone in the vehicle, and the accident had occurred approximately fifteen minutes earlier. She explained that she was coming home from work, a deer had run out in front of her, and she had swerved to avoid it. Shortly after she drove in the ditch, three vehicles had stopped to see if she was all right and she indicated she was. She then drove home; her house was within a mile of the accident site.

Sjerven observed indicia of intoxication, and placed respondent under arrest for driving while under the influence. He invoked the implied consent law. A blood test revealed an alcohol concentration of .18, and respondent's driving privileges were revoked.

Respondent testified that she arrived home a little after 11:00 p.m., and had a beer and two shots of vodka. She then left home with her husband; her husband drove. Barry Dutcher testified that his wife had a beer and several shots of vodka shortly after 11:00 p.m. They left home after 11:30 p.m.; he drove a Ford pickup truck. They were then stopped by the trooper.

The trial court, based on this testimony, determined that the officer never saw respondent driving, operating, or in physical control of the motor vehicle, and that the arrest was based on statements made by the Dutchers and the trooper's observations of respondent. It concluded that because respondent had consumed alcoholic beverages just prior to being interviewed by the trooper, and after the alleged accident, the Commissioner did not show by a fair preponderance of the evidence that respondent had an alcohol concentration of .10 or more at the time of the alleged accident. The trial court rescinded the revocation of respondent's driving privileges, and the Commissioner appeals.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## ISSUES

1. Did the trooper have probable cause to arrest respondent for driving while under the influence?

2. Did respondent raise the issue of her alcohol concentration at the time of driving with sufficient specificity?

3. Does the Commissioner have the burden of proving the respondent's alcohol concentration at the time of the accident?

4. May respondent show as an affirmative defense that her post-accident alcohol concentration of .10 or more was attributable to consumption of alcohol after the accident and that she had an alcohol concentration of less than .10 at the time of the accident?

5. Did respondent establish that her alcohol concentration was below .10 at the time of the accident?

## ANALYSIS

■ 1. A police officer must have probable cause to believe a person was driving, operating, or in physical control of a motor vehicle in violation of Minn. Stat. § 169.121 in order to invoke the implied consent law. Minn. Stat. § 169.123, subd. 2(a). The trial court here concluded that the trooper never observed respondent driving, operating, or in physical control of a motor vehicle on May 11, and that statements by Barry Dutcher and respondent and observations which the trooper made of respondent were the bases for the arrest. The statements indicated that respondent had been in a rollover accident and the officer observed that respondent exhibited indicia of intoxication. The issue here is whether these facts are sufficient to provide probable cause.

■ The fact that the officer did not observe the accident is not conclusive. Minn.Stat. § 169.121, subd. la explicitly provides that an officer may make an arrest upon probable cause, without regard to whether the violation was committed in the officer's presence. This court has recently reiterated the probable cause standard:

> Probable cause exists where all the facts and circumstances would warrant a

cautious person to believe that the suspect is guilty. *State v. Olson,* 342 N.W.2d 638, 640 (Minn. Ct.App.1984). It must be viewed from the point of view of a prudent and cautious police officer on the scene. *State v. Harris,* 265 Minn. 260, 264, 121 N.W.2d 327, 330–31, *cert. denied,* 375 U.S. 867 [84 S.Ct. 141, 11 L.Ed.2d 94] (1963). Trained law enforcement officers may make inferences and deductions that might elude an untrained person. *State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983). The court must examine the totality of the circumstances to determine whether probable cause exists. *Eggersgluss v. Commissioner of Public Safety,* 393 N.W.2d 183, 185 (Minn.1986).

*Vangstad v. Commissioner of Public Safety,* 404 N.W.2d 15 (Minn.Ct.App.1987).

In this case, the trooper testified that he had received reports of an accident, and the driver and her husband both acknowledged that she had been driving and had been involved in the accident shortly before. *Eggersgluss v. Commissioner of Public Safety,* 393 N.W.2d 183, 185 (Minn.1986). He observed indicia of intoxication. There was no testimony indicating respondent told the trooper she had been drinking after the accident. This court must make the probable cause determination based upon the information the officer had at the time of the test. *Foster v. Commissioner of Public Safety,* 381 N.W.2d 512, 515 (Minn. Ct.App.1986). The trooper had probable cause to believe respondent had been driving while under the influence.

■ 2. The next question arising is whether the issue of respondent's alcohol concentration at the time of the driving was properly before the court. First, the Commissioner argues this issue is not raised with sufficient specificity in the petition. The petition alleged in relevant part that respondent had consumed alcoholic beverages just prior to contact with the police officer. This raises the issue with sufficient specificity.

The question of whether an issue is raised with sufficient specificity in a petition is raised frequently by the Commissioner, as well as complaints of "shotgun" petitions for judicial review. While the petitioner should comply with the specificity

requirement, the precise issues to be litigated, as well as those to be eliminated, should be stated to the trial court prior to the receipt of evidence to clarify to the trial court and the parties the issues raised. By doing so, clearer, more concise hearings would result.

3. The trial court concluded that the Commissioner did not meet his burden of showing by a fair preponderance of the evidence that respondent had an alcohol concentration of .10 or more at the time of the alleged accident. The Commissioner argues that he must establish respondent's alcohol concentration at the time of testing, not at the time of driving. Minn.Stat. § 169.123, subd. 6 provides that the following issue may be raised:

> whether a test was taken and the test results indicated an alcohol concentration of 0.10 or more *at the time of testing,* and whether the testing method used was valid and reliable, and whether the test results were accurately evaluated.

Minn.Stat. § 169.123, subd. 6(3)(b) (1984) (emphasis added). We do not concur with the trial court's conclusion that the Commissioner had the burden of proving respondent's alcohol concentration was .10 or more at the time of the accident. The Commissioner's burden extends only to the concentration at the time of testing, insofar as implied consent is concerned, under Minn. Stat. § 169.123, subd. 6. He met that burden.

4. The Commissioner also contends that the issue of whether a driver consumed a sufficient quantity of alcohol after an accident but before testing to cause the driver's alcohol concentration to exceed 0.10 may be raised as an affirmative defense in a criminal proceeding, Minn. Stat. § 169.-121, subd. 2, but that the implied consent law does not allow such a defense.

We believe that post-accident consumption of alcohol is an affirmative defense. If the respondent establishes that the reading of .18 was due to post-accident drinking, and that her reading would have been less than .10 at the time of the accident, such evidence certainly is germane to the proceeding. A contrary result could revoke the license of one entirely sober at the time of accident who thereafter imbibed but did not drive. The burden of establishing this defense should fall upon respondent, because she is in the best position to know how much alcohol, if any, she consumed after the accident. If she meets her burden, she is entitled to reinstatement of her license.

5. The final issue is whether there was a sufficient showing that respondent did not have an alcohol concentration of .10 or more at the time the accident occurred. The Commissioner contests the trial court determination that respondent had consumed alcohol after the accident and prior to contact with the police officer. The trial court determination is not clearly erroneous.

The trial court also determined the Commissioner did not meet his burden of proving respondent's alcohol concentration was .10 or more at the time of the alleged accident. As discussed above, this is not the Commissioner's burden. It is an affirmative defense which leaves the burden upon respondent to show that post-accident drinking accounted for a reading of .10 or more. Respondent chose to rely upon her own testimony and that of her husband and neither side resorted to scientific evidence or hypothetical questions posed to an expert.

The trial court was in the best position to evaluate the weight of the testimony and the credibility of the witnesses. Inferentially, the finding of the trial court, while not specifically so stating, leads reasonably to the conclusion that respondent had met her burden, and that at the time of the accident her alcoholic concentration was less than .10. We cannot say that the trial court was clearly erroneous and accordingly we affirm.

### DECISION

The trial court's decision rescinding the revocation is affirmed.

Affirmed.